**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:24-cr-20287-KMM-1

UNITED STATES OF AMERICA,

v.

DIORI BARNARD,

    Defendant.
_____/

**ORDER ON REPORT AND RECOMMENDATION**

THIS CAUSE came before the Court upon Defendant Diori Barnard's ("Defendant") Motion to Suppress. (ECF No. 29). The Court referred the Motion to the Honorable Ellen F. D'Angelo, United States Magistrate Judge, who held a hearing on the Motion on February 12, 2025. *See* (ECF Nos. 34, 58). On February 22, 2025, Magistrate Judge D'Angelo issued a Report and Recommendation ("R&R") recommending that the Motion be denied. (ECF No. 61). Defendant filed timely objections. ("Obj.") (ECF No. 62). The matter is now ripe for review. As set forth below, the Court ADOPTS the R&R.

**I.  BACKGROUND**

Although Magistrate Judge D'Angelo thoroughly parsed through the Motion and extracted the allegations therein, the Court nevertheless provides a brief summary. On February 6, 2025, a Grand Jury sitting in the Southern District of Florida returned a three-count Superseding Indictment against Defendant. (ECF No. 51). Defendant was charged with (1) Possession with Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), (2) Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i), and (3) Possession of a Firearm by a

Convicted Felon, in violation of Title 18, United States Code, Section 922(g)(1). *Id.*

"In July 2022, law enforcement began investigating a series of events targeting Victim 1 and Victim 2 between 2019 and September 2023, including an alleged poisoning, two vehicle arsons, a hit and run, and the mailing of a threatening letter." R&R at 2 (citing ECF No. 29–1 at 4). Following that investigation, four individuals were charged in connection with Victim 1's estranged husbands alleged plan to harass and target her. *Id.*

On June 23, 2024, Victim 1 was parked in her driveway when a black male ("Subject 1") "ran toward her brandishing a firearm." *Id.* Subject 1, who is not alleged to be the Defendant, ultimately pointed a silver pistol at an individual who came from inside Victim 1's home before fleeing the area in a black Dodge Ram. *Id.* The incident was captured on Victim 1's surveillance cameras, which displayed Subject 1's vehicle in close proximity to a white Tesla registered to Defendant before the incident. *Id.* The two vehicles' driving patterns led law enforcement officers to believe the drivers may have been working in concert. *Id.* The white Tesla was registered to Defendant at his home address. *Id.* On May 3, 2024, law enforcement officers observed a black Dodge Ram, similar to the one involved in the June 23, 2024, incident, parked next to a Chevrolet Tahoe, also registered to Defendant, in Defendant's residential driveway.

In reliance on an affidavit submitted by Federal Bureau of Investigations Special Agent Conor Goepel ("Agent Goepel") which described the aforementioned series of events (ECF No. 29–1) (the "Affidavit"), United States Magistrate Judge Lisette M. Reid in the Southern District of Florida authorized the search warrant on June 24, 2024, on Defendant's home and person for "firearms, garments matching Subject 1's clothing, particles that could include DNA, such as hair follicles, blood, skin tissue, saliva, or mucus, and electronic devices and storage media, of which the warrant also authorized a search, among other items." *Id.* at 4. During the search, law

enforcement recovered "a silver 9mm pistol loaded with 12 rounds of ammunition, an AR-style rifle, a Glock 19 pistol loaded with 12 rounds of ammunition, hundreds of rounds of ammunition, and multiple bags containing what was later determined to be cocaine, methamphetamine, and fentanyl among other items." *Id.* at 4.  Defendant was subsequently "arrested and charged with the instant offenses," and now before this Court is Defendant's Motion to Suppress.  *Id.*

## I.    LEGAL STANDARD

The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3).  The Court "must consider *de novo* any objection to the magistrate judge's recommendation."  Fed. R. Crim. P. 59(b)(3).  A *de novo* review is therefore required if a party files "a proper, specific objection" to a factual finding contained in the report.  *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006).  "It is critical that the objection be sufficiently specific and not a general objection to the report" to warrant *de novo* review.  *Id.*

A party's objections are improper, however, if they expand upon and reframe arguments already made and considered by the magistrate judge, or simply disagree with the magistrate judge's conclusions.  *See Melillo v. United States*, No. 17-CV-80489, 2018 WL 4258355, at *1 (S.D. Fla. Sept. 6, 2018); *see also Marlite, Inc. v. Eckenrod*, No. 10-23641-CIV, 2012 WL 3614212, at *2 (S.D. Fla. Aug. 21, 2012) ("It is improper for an objecting party to . . . submit [ ] papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge.  Clearly, parties are not to be afforded a 'second bite at the apple' when they file objections to a R & R.") (quoting *Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)).  When the objecting party has not properly objected to the magistrate judge's findings,

"the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See Keaton v. United States*, No. 14-21230-CIV, 2015 WL 12780912, at *1 (S.D. Fla. May 4, 2015); *see also Lopez v. Berryhill*, No. 17-CV-24263, 2019 WL 2254704, at *2 (S.D. Fla. Feb. 26, 2019) (stating that a district judge "evaluate[s] portions of the R & R not objected to under a clearly erroneous standard of review" (citing *Davis v. Apfel*, 93 F. Supp. 2d 1313, 1317 (M.D. Fla. 2000))).

## II.    DISCUSSION

Defendant objects both to the factual findings set forth in the R&R and Magistrate Judge Angelo's ultimate recommendation that the Motion be denied. *See generally* Obj. Defendant's objections to the R&R fall into five categories: (1) findings with respect to federal jurisdiction and an "unrelated investigation," (2) findings related to surveillance footage, (3) finding there was a "sufficient nexus" between Defendant's home and the June 23, 2024 incident sufficient to establish probable cause, (4) finding Defendant was not entitled to a *Franks* hearing, and (5) finding regarding the "good faith exception." *See generally* Obj. The Court takes each of Defendant's objections in turn.

First, Defendant argues that (1) the Affidavit does not contain facts sufficient to conclude the assault was part of an ongoing offense to commit murder for hire or stalking, (2) "even if the assault was part of an ongoing to plot to commit [murder for hire or stalking] the assault does not trigger federal jurisdiction." *See* Obj. at 5–8. As an initial matter, Defendant only cites to *United States v. Folk*, 754 F.3d 905 (11th Cir. 2014), to support his argument that the magistrate judge lacked jurisdiction to issue the warrant; nevertheless, in *Folk*, the Eleventh Circuit did not address whether a warrant was properly issued and upheld the lower court's denial of a motion to suppress. *See* Obj. at 6 n.9; *see also Folk*, 754 F.3d at 918 ("Folk does not challenge the issuance of the

warrant. Instead, his argument . . . is that the seizure was not authorized either under the scope of the search warrant or pursuant to the plain view doctrine"). Moreover, Defendant argues that the "Affidavit at issue did not provide Magistrate Judge D'Angelo with any facts, whatsoever, from which to conclude the assault was part of an ongoing offense to commit Murder for Hire or Stalking." Obj. at 8. Nevertheless, Defendant's characterization of the R&R is flatly inaccurate; the R&R specifically noted:

> A common sense, practical reading of the affidavit supports the conclusion that the June 23, 2024 incident, where Subject 1 approached Victim 1 brandishing a firearm, was part of an ongoing Murder for Hire and Stalking plot targeting Victim 1. Paragraphs five, six, and seven of the affidavit describe a series of events, beginning in 2019 and continuing through September 26, 2023, where Victim 1's estranged husband organized a "coordinated effort . . . to harass and target" Victim 1, including working with four individuals to commit arsons and a hit and run, after following Victim 1 from a divorce proceeding (DE 29-1 at 4-5). The hit and run, which occurred on August 30, 2023, involved the assailants ramming a Home Depot rental truck into the side of Victim 1's car and then fleeing the scene (id. at 5). Two of the individuals who carried out these acts admitted to law enforcement that they were targeting Victim 1 on behalf of her estranged husband (id.). After laying out this plot, the affidavit then describes the assault on June 23, 2024 (id.). Considering the June 23, 2024 assault occurred less than a year after the hit and run, targeted the same victim, and was another violent and threatening act, the Magistrate Judge could have reasonably concluded that it was another attempt to target Victim 1 in the plot organized by Victim 1's estranged husband. *See Delgado*, 981 F.3d at 897 ("The mere 'probability or substantial chance of criminal activity' is all that is needed." (citation omitted)).

R&R at 8. Defendant's objections do not specifically address these assertions. Furthermore, this Court finds that Magistrate Judge Reid had jurisdiction to issue a search warrant in this case and overrules Defendant's first objection.

Second, Defendant objects to the R&R's description of a video described in the Affidavit "where the Dodge Ram and Tesla appeared in proximity of each other at various times." Obj. at 10. Specifically, Defendant notes that the video, which was disclosed to Defendant after the instant motion was filed, "revealed that the vehicles drove in proximity of one another for a total of just fifteen (15) seconds." Obj. at 10. Nevertheless, the R&R addressed Defendant's assertion that

Agent Goepel incorrectly concluded that "based on the proximity of the black Dodge Ram pickup truck and the white Tesla over time, distance, and consistent change of direction" there was "likely a direct relationship" between the two drivers.  R&R at 16 (citing ECF No. 29–1 at 8).

A magistrate judge's finding of probable cause "is conclusive absent arbitrariness." *United States v. Poindexter*, 176 F. App'x 957, 959 (11th Cir. 2006).  "Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *United States v. King*, 233 F. App'x 969, 972 (11th Cir. 2007) (quoting *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir.1999)).  "Even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." *United States v. Flowers*, 531 F. App'x 975, 980 (11th Cir. 2013) (citing *United States v. Sarras*, 575 F.3d 1191, 1218 (11th Cir. 2009)) (quotation marks omitted).  Moreover, Defendant "bears the burden of showing that probable cause would have been lacking absent those omissions." *Id.*  "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Flowers*, 531 F. App'x at 980 (quoting *Franks v. Delaware*, 438 U.S. 154, 155–156 (1978)) (cleaned up).  Supporting proof can include affidavits, sworn statements, or "otherwise reliable statements of witnesses, apart from the warrant affidavit," but mere argument or conclusory allegations are insufficient. *See id.*

Here, while Defendant argues the surveillance footage supports his assertions, he has failed to provide this Court with the referenced video or any other relevant evidence to support his argument that the Affidavit's description of the incident, and the Magistrate's description therewith, is inaccurate.  Moreover, while Defendant argues that "Magistrate Judge D'Angelo erred in making findings as to the contents of the video without out actually viewing that video[,]"

6

this argument is unavailing where there is nothing on the record to support that Defendant made any effort to provide the video to Magistrate Judge D'Angelo or this Court. *See* Obj. at 10. Consequently, this Court is left with Defendant's bare bones allegation that the Affidavit inaccurately described the incident and does not find that allegation alone sufficient to invalidate probable cause or warrant a hearing.

Third, Defendant argues that "Magistrate Judge D'Angelo neglected to discuss [the] nexus requirement" and that the R&R "found probable cause despite a complete lack of information linking the Home to the Target Offenses or the assault[.]" Obj. at 12–13. Again, Defendant's characterization of the R&R is flatly inaccurate; the R&R thoroughly addressed the nexus between the target offenses and the search of the Defendant's home and properly concluded that "the affidavit in this case connected the assault to the white Tesla, the white Tesla to Defendant, and Defendant to his home, where he is likely to keep instrumentalities of the crimes." R&R at 14. Defendant argues that absent evidence that Defendant was "the driver of the Tesla on the day of the assault," there could not be a finding of probable cause. Obj. at 13. This argument fails, however, because there was sufficient circumstantial evidence to support law enforcements belief that Defendant was the driver on the day of the assault; specifically on the day of the assault, the Tesla was registered to Defendant and a black Dodge Ram, which was similar to the one driven by Subject 1 on June 23, 2024, was found parked in Defendant's driveway several weeks prior next to another vehicle owned by Defendant. *See* Affidavit ¶¶ 10–11; *see also* R&R at 9–14.

Fourth, Defendant argues that the R&R used the incorrect legal standard to determine whether he was entitled to a *Franks* hearing. Obj. at 14. A defendant is entitled to a *Franks* hearing if he makes "a 'substantial preliminary showing' that (1) the affiant deliberately or recklessly included false statements, or failed to include material information, in the affidavit; and

7

(2) the challenged statement or omission was essential to the finding of probable cause." *United States v. Arbolaez*, 450 F.3d 1283, 1293 (11th Cir. 2006) (quoting *Franks v. Delaware*, 438 U.S. 154, 155–156 (1978)). "To obtain a *Franks* hearing, a defendant must not only show that the affiant made false statements or omissions 'intentionally or with reckless disregard for the truth,' but also that the false statements or omissions were 'necessary to the finding of probable cause.' Neither negligent mistakes nor immaterial omissions implicate *Franks*." *See United States v. Goldstein*, 989 F.3d 1178, 1197 (11th Cir. 2021). Defendant argues that the affiant not only omitted the date the photo was taken but also a "copy of the photo itself (which would have shown the date the photo was taken)." Obj. at 16 n. 27. Nevertheless, as the R&R correctly noted, "even if the omissions Defendant points to were included in the warrant, there would still be probable cause to search Defendant's home." R&R at 20. The R&R further noted:

> The significance of this photograph is not to show that evidence of the target offenses would likely be located in Defendant's home at the time because the same black Dodge Ram pick-up truck used in the offense was parked there a day later. Instead, the significance of the photograph is that it supports the inference that the occupant, or occupants, of the white Tesla were involved in the target offenses. The photograph helps demonstrate that it was not merely a coincidence that the black Dodge Ram pick-up truck and the white Tesla were seen on the video together hours prior to the assault. It is a further connection between the two vehicles to suggest their occupants were working in concert with each other. Viewing the significance of the photograph in this manner, the Government correctly points out that the fact that the photograph was taken approximately seven weeks earlier actually strengthens the inference, as opposed to undercutting it. The Murder for Hire and Stalking plot is a continuing offense that involved organization and planning between the co-conspirators. The Murder for Hire and Stalking plot is a continuing offense that involved organization and planning between the co-conspirators. The black Dodge Ram pick-up truck depicted at Defendant's home seven weeks prior to the assault suggests that Defendant was working with the co-conspirators well before June 23, 2024. Therefore, the inclusion of the May 3, 2024 date of the photograph depicting a black Dodge Ram pick-up truck, which is consistent with the vehicle in which Subject 1 fled, at Defendant's home does not negate the probable cause.

R&R at 20–21. This Court agrees and finds that Defendant has not made a sufficient showing of

entitlement to a *Franks* hearing, because the date's omission was not "necessary to the finding of probable cause." *Goldstein*, 989 F.3d at 1197 (quotations omitted).

Fifth, Defendant objects to the R&R's determination that "'there is no basis to conclude'" that the affiant "'acted with reckless disregard in omitting the date of the photo.'" Obj. at 22 (quoting R&R at 23–24). Defendant argues, without citation, that the R&R incorrectly noted that "law enforcement obtained the search warrant the day after the assault in a fast-moving investigation of violent offenses that indicated Victim 1 was the target of a years-long plot to kill her," R&R at 23–24, because "the nature of an alleged offense is never a consideration under the good-faith exception." Obj. at 22. Nevertheless, as this Court has determined that the warrant did not lack sufficient probable cause, it need not consider whether the good-faith exception applies. *See United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002) ("*United States v. Leon*, 468 U.S. 897, 922 (1984), stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause.") (citation edited)).

### III. CONCLUSION

UPON CONSIDERATION of the Motion, the R&R, the Objections, the pertinent portions of the record, and being otherwise fully advised in the premises, the R&R (ECF No. 62) is hereby ADOPTED. Defendant's Objections (ECF No. 62) are OVERRULED and Defendant's Motion to Suppress (ECF No. 29) is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this *5th* day of March 2025.

*K. M. Moore*
K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record